Filed 10/2/20  P. v. Downey CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMES J. DOWNEY,<br><br>    Defendant and Appellant. | B291436<br><br>(Los Angeles County<br>Super. Ct. No. PA089166) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Hayden A. Zacky, Judge.  Affirmed.

Sylvia Eva Ronnau and Eric E. Reynolds, under appointments by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

James J. Downey appeals the judgment entered following a jury trial in which he was convicted of possession of an assault weapon in violation of Penal Code[1] section 30605, subdivision (a). The trial court suspended execution of a three-year prison sentence and placed appellant on formal probation for three years with conditions that he serve 365 days in county jail, pay various fines and fees, and submit to searches of his electronic information.

Appellant contends:  (1) California's complete ban on semiautomatic rifles with no exception for in-home self-defense violates the Second Amendment, rendering appellant's conviction unconstitutional; (2) the electronics search probation condition imposed by the trial court is unreasonable, and trial counsel was ineffective for failing to object to it; and (3) the court's imposition of a restitution fine and court facilities and government operations fees without a determination of appellant's ability to pay violates appellant's constitutional rights under *People v. Dueñas* (2019) 30 Cal.App.5th 1157.  We disagree and affirm the judgment of conviction.  Appellant also requests that this court review the sealed portion of the search warrant affidavit to determine whether the trial court properly denied appellant's motion to quash and traverse the search warrant.  However, appellant's failure to present an adequate record forecloses review of the trial court's denial of the motion on appeal.

## FACTUAL BACKGROUND

On June 20, 2017, around 4:40 a.m., Los Angeles Police Officer Jose Lopez along with several other officers executed a search warrant at appellant's residence.  The officers were

---

[1] Undesignated statutory references are to the Penal Code.

looking for illegal assault weapons, such as AR-15's and AK-47's, as well as narcotics.

Inside the home, officers found nine firearms, including a Norinco 56S semiautomatic assault rifle. The Norinco 56S is a Chinese "knock-off" of the AK-47. The Norinco was not loaded, but officers found 337 rounds of ammunition for it, as well as directions for converting it into a fully automatic rifle.[2]

During an interview with police, appellant stated he had inherited the assault rifle from his grandfather, he had never taken it outside the house, and he had never fired the weapon.

## DISCUSSION

### I. Appellant's Second Amendment Challenge to His Conviction Has Been Forfeited and Lacks Merit

Appellant was convicted under section 30605, subdivision (a), which prohibits possession of any assault weapon in the State of California. The Norinco 56S model of firearm found in appellant's possession is statutorily enumerated as a prohibited assault weapon. (§ 30510, subd. (a)(1)(B).) Appellant contends that California's ban on semiautomatic rifles such as the Norinco 56S without an exception for in-home self-defense violates the Second Amendment. Appellant's failure to raise the claim below forfeits his challenge on appeal. In any event, the argument lacks merit.

---

[2] Officers also found a glass pipe containing a substance resembling crystal methamphetamine, but appellant was charged only with the firearm offense.

3

## A. *The claim is forfeited*

"As a general rule, only 'claims properly raised and preserved by the parties are reviewable on appeal.' " (*People v. Smith* (2001) 24 Cal.4th 849, 852.) " 'Ordinarily, a criminal defendant who does not challenge an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal.' " (*People v. McCullough* (2013) 56 Cal.4th 589, 593, quoting *In re Sheena K.* (2007) 40 Cal.4th 875, 880.) This rule of forfeiture applies to any sort of right, including a constitutional right. (*In re Sheena K.*, at pp. 880–881, quoting *United States v. Olano* (1993) 507 U.S. 725, 731 [" ' "a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it" ' "].)

Appellant did not raise his Second Amendment challenge in the trial court. He neither asserted nor presented any evidence to support the claim he makes on appeal that he possessed the assault rifle for in-home self-defense. He also failed to argue and presented no evidence to support the assertion that such weapons are not dangerous or unusual because "[m]illions of Americans keep semi-automatic rifles" for lawful purposes. Appellant has forfeited the issue.

## B. *Appellant's Second Amendment challenge fails*

In any event, we reject appellant's challenge on its merits. (See *People v. Frederickson* (2020) 8 Cal.5th 963, 1031 (conc. opn. of Liu, J.) [courts "regularly excuse forfeiture where the defendant has asserted the deprivation of a fundamental constitutional right"].)

4

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." (See *District of Columbia v. Heller* (2008) 554 U.S. 570, 576 (*Heller*).) In *Heller*, the Supreme Court held that although "the Second Amendment conferred an individual right to keep and bear arms," that right was not unlimited. (*Id*. at p. 595.) Indeed, "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained" that the Second Amendment right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." (*Id*. at p. 626; *People v. Zondorak* (2013) 220 Cal.App.4th 829, 832 (*Zondorak*) [Second Amendment's protections are not unlimited and "do not extend to *any* type of weapon"]; *People v. James* (2009) 174 Cal.App.4th 662, 674 (*James*) [same].)

*Heller* concerned the District of Columbia's total ban on handgun possession in the home and a prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense. The Supreme Court held both restrictions violated the Second Amendment.[3] (*Heller*, *supra*, 554 U.S. at p. 635.) However, the court concluded that "those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns" are excluded from Second Amendment protection. (*Id*. at p. 625.) And recognizing

[3] While the Supreme Court held in *McDonald v. City of Chicago* (2010) 561 U.S. 742, 791 (*McDonald*), that "the Second Amendment right recognized in *Heller*" also applies to the States, the Court did not otherwise expand or contract the substantive scope of the Second Amendment right acknowledged in *Heller*.

that "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons' " places an "important limitation on the right to keep and carry arms," *Heller* also indicated that "weapons that are most useful in military service—M-16 rifles and the like—may be banned." (*Id.* at p. 627; see *Zondorak, supra,* 220 Cal.App.4th at p. 834 [*Heller* "specifically referenced M-16 rifles as weapons that could properly be banned without offending the Second Amendment"]; *James, supra,* 174 Cal.App.4th at p. 676 [as *Heller* makes clear, "the Second Amendment right does not protect possession of a military M-16 rifle"].)

*Heller* also did not foreclose the possibility of other constitutional prohibitions on the possession of particular firearms. "*Heller* does not purport to define the full scope of the Second Amendment" (*Friedman v. City of Highland Park* (7th Cir. 2015) 784 F.3d 406, 410), and the high court has declared that the Second Amendment "does not imperil every law regulating firearms." (*McDonald, supra,* 561 U.S. at 786; *Heller, supra,* 554 U.S. at pp. 626–627 & fn. 26.) Indeed, as the court in *Friedman* cautioned, "courts should not read *Heller* like a statute rather than an explanation of the Court's disposition," pointing out that *Heller*'s language "is precautionary: it warns against readings that go beyond the scope of *Heller*'s holding that 'the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense.' " (*Friedman,* at pp. 409–410; *United States v. Skoien* (7th Cir. 2010) 614 F.3d 638, 640.)

Following *Heller,* the Court of Appeal in *James* held that possession of an assault weapon in California is not protected by the Second Amendment. (*James, supra,* 174 Cal.App.4th at

6

p. 664.)  Echoing the Legislature's concerns, the court explained that "[a]n assault weapon 'has such a high rate of fire and capacity for firepower that its function as a legitimate sports or recreational firearm is substantially outweighed by the danger that it can be used to kill and injure human beings.' " (*Id.* at p. 676, quoting former § 12275.5, subd. (a), reenacted as § 30505, subd. (a) without substantial change.)  Declaring "[t]hese are not the types of weapons that are typically possessed by law-abiding citizens for lawful purposes such as sport hunting or self-defense; rather, these are weapons of war," the *James* court concluded that assault weapons are excluded from Second Amendment protection under *Heller*.  (*James*, at p. 676; see *Zondorak*, *supra*, 220 Cal.App.4th at p. 836.)

Like appellant here, the defendant in *Zondorak* contended that California's ban on AK series rifles violates the Second Amendment because it provides no exception for possession in the home for self-defense.  *Zondorak* rejected the contention, noting, "other courts have acknowledged that 'it cannot be the case that possession of a firearm in the home for self-defense is a protected form of possession under all circumstances.  By this rationale, any type of firearm possessed in the home would be protected merely because it could be used for self-defense.  Possession of machine guns or short-barreled shotguns—or any other dangerous and unusual weapon—so long as they were kept in the home, would then fall within the Second Amendment.  But the Supreme Court has made clear the Second Amendment does not protect those types of weapons.' " (*Zondorak, supra*, 220 Cal.App.4th at p. 837, quoting *United States v. Marzzarella* (3d Cir. 2010) 614 F.3d 85, 94.)  Accordingly, "when a weapon falls outside the class of weapons entitled to Second Amendment

7

protections, neither the place in which it is stored nor the purposes for which it might be used imbues the weapon with Second Amendment protections." (*Zondorak*, at p. 837.)

Citing *Caetano v. Massachusetts* (2016) __ U.S. __ [136 S.Ct. 1027, 1031 (conc. opn. of Alito, J.), appellant asserts that a weapon falls outside of Second Amendment protection only if it is *both* dangerous *and* unusual, and argues that a weapon that many law-abiding Americans possess cannot be deemed "a 'dangerous and unusual' weapon in a constitutional sense." (*Kolbe v. Hogan* (4th Cir. 2017) 849 F.3d 114, 152 (dis. opn. of Traxler, J.).) Appellant thus contends that *James* and *Zondorak* were wrongly decided because "[m]illions of Americans keep semi-automatic rifles and use them for lawful, non-criminal activities," making them "typical weapons that 'law-abiding citizens' possess."

The argument fails. Appellant has presented no evidence or empirical support for his claim that millions of law-abiding citizens possess and use semiautomatic weapons for lawful purposes. Instead, he merely points out that California is in a small minority of states to regulate or ban semiautomatic assault weapons, and he cites two federal appellate courts' conclusions—based on evidence and expert testimony presented in those cases—that these weapons are in "common use." (See, e.g., *Heller v. District of Columbia* (D.C. Cir. 2011) 670 F.3d 1244, 1261 (*Heller II*) ["Approximately 1.6 million AR-15s alone have been manufactured since 1986, and in 2007 this one popular model accounted for 5.5 percent of all firearms, and 14.4 percent of all rifles, produced in the U.S. for the domestic market"]; *New York State Rifle & Pistol Ass'n v. Cuomo* (2d Cir. 2015) 804 F.3d 242, 255 (*Rifle & Pistol Ass'n*) ["This much is clear: Americans

own millions of the firearms that the challenged legislation prohibits"].)

Even assuming widespread production and possession of certain semiautomatic rifles, appellant offers no support for his assertion that these are typical weapons that law-abiding Americans possess and use for lawful purposes, including self-defense in the home.[4]  Thus, on this record, there is simply no reasoned basis on which to reject the *James* and *Zondorak* courts' conclusions that *Heller*'s exclusion of machine guns and M-16-type weapons from Second Amendment protection also applies to the semiautomatic assault rifles listed in section 30510 that are banned under California law.

---

[4] In the cases appellant cites, the courts did not decide, but simply "assume[d] for the sake of argument that these 'commonly used' weapons and magazines are also 'typically possessed by law-abiding citizens for lawful purposes.' " (*Rifle & Pistol Ass'n*, *supra*, 804 F.3d at p. 257 ["In short, we proceed on the assumption that these laws ban weapons protected by the Second Amendment"]; *Heller II*, *supra*, 670 F.3d at pp. 1261–1262, 1264 ["based upon the record as it stands, we cannot be certain whether these weapons are commonly used or are useful specifically for self-defense or hunting," but assume prohibitions of certain semiautomatic rifles "impinge upon the right protected by the Second Amendment"]; see *Worman v. Healey* (1st Cir. 2019) 922 F.3d 26, 36 ["we simply assume, albeit without deciding, that the Act burdens conduct that falls somewhere within the compass of the Second Amendment"].)

## II. Appellant Forfeited Any Challenge to the Electronics Search Condition, and His Ineffective Assistance of Counsel Claim Fails

As one of his conditions of probation, the trial court required appellant to "submit [his] person and property to search and seizure at any time . . . , with or without a warrant, probable cause, or reasonable suspicion, including but not limited to, [his] . . . electronic information." Appellant did not object to the electronics search condition below.

Appellant now argues for the first time that the probation condition is unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) because it is unrelated to the offense of possession of an assault rifle for which appellant was convicted, it does not concern conduct that is itself unlawful, and it bears no relation to future criminality. (*Lent*, at p. 486; *In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118.) According to appellant, the trial court abused its discretion in imposing the search condition, and it should be stricken. (*People v. Moran* (2016) 1 Cal.5th 398, 403 (*Moran*) [conditions of probation reviewed on appeal for abuse of discretion].)

However, "[a]s a rule, failure to object to a probation condition in the trial court on standard state law or reasonableness grounds forfeits the claim for appeal." (*Moran, supra*, 1 Cal.5th at p. 404, fn. 7; *People v. Welch* (1993) 5 Cal.4th 228, 237 [failure to timely challenge probation condition on *Lent* grounds in trial court forfeits claim on appeal].) Appellant's failure to raise any objection to the conditions of his probation forfeits his challenge to the electronics search condition here.

Appellant seeks to avoid forfeiture by asserting that because there could have been no tactical basis for the failure to

10

object to the probation condition, his trial counsel was ineffective. Appellant has failed to show he received ineffective assistance of counsel.

"An ineffective assistance claim has two components:  A [defendant] must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.  [Citation.]  To establish deficient performance, a [defendant] must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.' " (*Wiggins v. Smith* (2003) 539 U.S. 510, 521; *Strickland v. Washington* (1984) 466 U.S. 668, 687–688 (*Strickland*); *In re Gay* (2020) 8 Cal.5th 1059, 1073.)  We assess independently the mixed questions of law and fact presented in determining whether counsel's performance was deficient and whether any deficiency prejudiced defendant.  (*In re Gay*, at p. 1073.)

But " '[u]nless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.]  If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation."  [Citations.]  If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ' " (*People v.*

11

*Bell* (2019) 7 Cal.5th 70, 125–126 (*Bell*); see *Strickland, supra,* 466 U.S. at pp. 687–688, 694.)

Although the record in this case does not reveal an explicit explanation for counsel's failure to object to the electronics search condition, appellant is nevertheless incorrect in his assertion that there could be "no rational basis for counsel's lack of objection under the circumstances of the case, given the current legal landscape regarding electronics searches."[5]

In his affidavit in support of the search warrant in this case, Officer Lopez stated, "it is your affiant's expert opinion that illegal firearms, including . . . assault rifles, along with methamphetamine are being stored and trafficked from the location to be searched." Officer Lopez sought "the court's permission to search any cell phones at the location," on the ground that, "[b]ased on prior investigations and through information received from fellow narcotics officers, your affiant is aware that it is common practice for persons engaged in the illicit sales of narcotics . . . to be contacted by narcotic distributors and/or sales associated [*sic*] via telephone." Among other things, the search warrant authorized the seizure of cell phones.

Given that appellant's use of his cell phone was considered an integral aspect of the criminal activity which prompted the

---

[5] Appellant's reference to the "current legal landscape regarding electronics searches" appears to refer to our Supreme Court's decision in *In re Ricardo P., supra,* 7 Cal.5th at pages 1119, 1122, which invalidated an electronics search condition under *Lent.* However, *Ricardo P.* was decided well after appellant's June 29, 2018 sentencing hearing, and thus did not represent the legal landscape when the trial court imposed the electronics search condition here.

12

search of his residence,[6] defense counsel could reasonably have concluded that the trial court would overrule any objection to the electronics search condition in this case. Defense counsel does not render ineffective assistance in failing to raise a meritless objection. (*Bell*, *supra*, 7 Cal.5th at p. 127; *People v. Thompson* (2010) 49 Cal.4th 79, 122 ["Counsel is not ineffective for failing to make frivolous or futile motions"].) Appellant's ineffective assistance of counsel claim therefore fails.

## III. Appellant's *Dueñas* Claim Lacks Merit

Appellant contends the trial court's imposition of restitution and parole revocation fines as well as the criminal conviction assessment and the court security fee was unconstitutional under *Dueñas*, *supra*, 30 Cal.App.5th 1157, which was decided after the sentencing hearing in this case. He

---

[6] In this regard, *In re Ricardo P.* is readily distinguishable from the instant case. In *Ricardo P.*, after admitting two counts of felony burglary, the juvenile court placed defendant on probation with the condition that he submit to warrantless searches of his electronic devices. The Supreme Court affirmed the judgment of the Court of Appeal in striking the electronics search condition under *Lent* on the grounds that it had no relationship to the burglaries of which defendant was convicted, it pertained to conduct that was not itself criminal, the condition was not reasonably related to future criminality, and "the burden it impose[d] on [defendant's] privacy [was] substantially disproportionate to the countervailing interests of furthering his rehabilitation and protecting society." (*In re Ricardo P.*, *supra*, 7 Cal.5th at pp. 1118–1119, 1122.) Here, by contrast, the electronics search condition of appellant's probation was directly related to the criminal activity that resulted in his conviction and the possibility of future criminality.

thus asserts he is entitled to remand to enable the trial court to determine his ability to pay. We reject the claim.

The trial court imposed the fines and assessments (without objection by appellant) before *Dueñas* was decided. We decline to extend *Dueñas*'s broad holding beyond the extreme facts in that case, which are not present here. Dueñas was a disabled, unemployed, and often homeless mother of two young children. Over the course of several years she served jail time because she could not pay the fines imposed in connection with various misdemeanor vehicle offenses. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1160–1162.) Applying a due process analysis to the particular facts before it, the appellate court concluded that "[b]ecause the only reason Dueñas cannot pay the fine and fees is her poverty, using the criminal process to collect a fine she cannot pay is unconstitutional." (*Dueñas*, at p. 1160.)

This case plainly does not implicate the same due process concerns at issue in the factually unique *Dueñas* case. At the time of sentencing, appellant was 48 years old and he owned a business building motorcycles. Unlike Dueñas, appellant does not face incarceration because of an inability to pay court-imposed fines, fees, and assessments. (See *Dueñas*, 30 Cal.App.5th at p. 1163.)

In *People v. Hicks* (2019) 40 Cal.App.5th 320, 322, 329 (*Hicks*), review granted November 26, 2019, S258946,[7] we

---

[7] The California Supreme Court ordered briefing deferred pending decision in *People v. Kopp*, S257844, which presents the following issues:

concluded that *Dueñas* was wrongly decided and rejected its holding that "due process precludes a court from 'impos[ing]' certain assessments and fines when sentencing a criminal defendant absent a finding that the defendant has a 'present ability to pay' them." (Accord, *People v. Petri* (2020) 45 Cal.App.5th 82, 92; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1067–1068; *People v. Caceres* (2019) 39 Cal.App.5th 917, 923, 926–927; *People v. Kingston* (2019) 41 Cal.App.5th 272, 279–282 (*Kingston*); *People v. Kopp* (2019) 38 Cal.App.5th 47, 96–97, review granted Nov. 13, 2019, S257844.)

Here, as in *Hicks*, "imposition of these financial obligations has not denied [appellant] access to the courts," nor has their imposition resulted in his incarceration. (*Hicks*, *supra*, 40 Cal.App.5th at p. 329.) And nothing prevents appellant from trying to satisfy these obligations while he is on probation. (*Id.* at pp. 327, 329.) If they remain unpaid at the end of the probationary period, it will be up to the trial court to determine at that time whether nonpayment was due to appellant's indigence or to a lack of bona fide effort. (*Id.* at p. 329.)

Moreover, the restitution fine is classified as a form of *punishment*. (*People v. Souza* (2012) 54 Cal.4th 90, 143.) Its

---

"(1) Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments? (2) If so, which party bears the burden of proof regarding the defendant's inability to pay?" (*People v. Hicks*, S258946, <https://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=0&doc_id=2302457&doc_no=S258946&request_token=NiIwLSEmXkw8W1BZSCNNTEtIUEQ0UDxTJiBeIz5SUCAgCg%3D%3D> [as of Apr. 20, 2020], archived at <https://perma.cc/M53U-K638>.)

imposition without regard to present ability to pay therefore does not violate appellant's due process rights because it is "*not a user fee* imposed on court access." (*People v. Son* (2020) 49 Cal.App.5th 565, 592.) As the United States Supreme Court has recognized, due process is implicated only where a defendant, who has no ability to pay, is imprisoned for failure to pay a punitive fine.[8] (See *Bearden*, *supra*, 461 U.S. at pp. 665, 667–668; *Tate v. Short* (1971) 401 U.S. 395, 398 [" 'the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the

---

[8] As the United States Supreme Court has explained, the distinction between probationers who shirk their financial obligations from those who are wholly unable to pay "is of critical importance." (*Bearden v. Georgia* (1983) 461 U.S. 660, 668 (*Bearden*).)

"If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection. [Citation.] Similarly, a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense. But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available. This lack of fault provides a 'substantial [reason] which [justifies] or [mitigates] the violation and [makes] revocation inappropriate.' " (*Bearden*, *supra*, 461 U.S. at pp. 668–669.)

16

defendant is indigent and cannot forthwith pay the fine in full' "].)

Finally, the fines and fees imposed in this case are not excessive. Appellant possessed an illegal assault rifle and hundreds of rounds of ammunition for that weapon, creating an inherent risk to public safety. A $300 fine and $70 in assessments are not "grossly disproportional to the gravity of [his] offense." (*United States v. Bajakajian* (1998) 524 U.S. 321, 334.)

## IV. The Inadequate Record on Appeal Forecloses Review of the Trial Court's Denial of Appellant's Motion to Traverse and Quash the Search Warrant

In issuing the search warrant for appellant's residence in this case, the magistrate ordered that a confidential attachment to the warrant be sealed under Evidence Code section 1041 to protect the identity of a confidential informant. (*People v. Hobbs* (1994) 7 Cal.4th 948, 971 (*Hobbs*).) Before trial, appellant filed a motion to unseal, quash, and traverse the search warrant. The People filed a written opposition.

Asserting that the trial court "apparently" denied the motion, appellant requests this court to review the search warrant affidavit to determine whether the trial court properly denied appellant's motion to quash and traverse the warrant. The augmented record on appeal, however, includes only the moving and opposition papers. It does not contain the minute order from any hearing on the motion, nor does it include a reporter's transcript of any such hearing. In short, appellant has provided this court with nothing to review.

We would ordinarily review the trial court's denial of a motion to unseal the affidavit and to quash and traverse a search warrant for abuse of discretion. (*Hobbs*, *supra*, 7 Cal.4th at p. 976; *Davis v. Superior Court* (2010) 186 Cal.App.4th 1272, 1277.) That is, we would review the record to determine whether the trial court acted within its discretion in considering the motion, conducting its own in camera review of the sealed materials, and reviewing the magistrate's determination that sealing of the affidavit was necessary to implement the informant's privilege. (*Hobbs*, at p. 976.) Here, because appellant has failed to provide *any* record to permit review of his claim, the claim fails. (*People v. Whalen* (2013) 56 Cal.4th 1, 85; *People v. Chubbuck* (2019) 43 Cal.App.5th 1, 12 ["Where an appellant fails to supply a record adequate for review, his claim must fail"].)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

CHAVEZ, J.

19