Filed 10/21/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WILLIAM MARTIN ZONDORAK, JR.,<br><br>    Defendant and Appellant. | D062900<br><br><br>(Super. Ct. No. SCD225392) |

APPEAL from a judgment of the Superior Court of San Diego County, Robert F. O'Neill, Judge.  Affirmed.

Law Offices of Elliott N. Kanter and Elliott N. Kanter for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

William Zondorak was convicted of violating California's Assault Weapons Control Act (AWCA) because he possessed an AK series rifle.  He argues on appeal that,

under *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*), California's ban on possession of this weapon violates his right to keep and bear arms under the Second Amendment to the United States Constitution. Although other courts have rejected this expansive reading of *Heller* as precluding a state from banning assault weapons, and he cites no case applying *Heller's* principles to invalidate a state's ban on semi-automatic assault weapons, Zondorak asserts that we should construe *Heller* to bar California from criminalizing his possession of a semi-automatic AK series rifle. We conclude the ban on specified semi-automatic assault weapons under the AWCA does not transgress the Second Amendment, and affirm Zondorak's conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

Zondorak was charged by information of possession of an assault weapon in violation of former Penal Code section 12280, subdivision (b) (section 12280).[1] The parties stipulated that Zondorak "knowingly possessed an operable semi-automatic CN Romarm AK series rifle" and he waived jury trial. The court found him guilty of the charged offense and, after his motion to dismiss the information was denied, the court sentenced Zondorak to two days' incarceration already served.

On appeal, Zondorak does not contest he knowingly possessed an operable semi-automatic AK series rifle, or that the rifle is within the ban of the AWCA. Instead, he asserts the trial court erred when it denied his motion to dismiss because he argues

---

[1] At the time of the offense, section 12280 was the operative statute. Although section 12280 was later renumbered as Penal Code section 30605 and continued without substantive change (Stats. 2011, ch. 15 (AB 109) § 550), we refer to the statute as section 12280 for ease of reference.

section 12280 is unconstitutional as an infringement on his rights under the Second Amendment to the United States Constitution.

ANALYSIS

The issue presented is whether section 12280's ban on the possession of an AK series semi-automatic rifle by a private citizen in his home is unconstitutional under the Second Amendment to the United States Constitution, which provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  The trial court rejected this argument, and we agree.[2]

A. Relevant Legal Precedents

*Heller*

In *Heller, supra*, 554 U.S. 570, the United States Supreme Court construed the Second Amendment to confer on individuals the right to keep and bear arms, and a ban on handgun possession in the home violated that right.  (*Heller,* at pp. 595, 635.)  In *McDonald v. City of Chicago* (2010) 130 S.Ct. 3020, 3026, the United States Supreme Court held the rights preserved by the Second Amendment are fully applicable to the states, but did not alter *Heller's* framework for evaluating the scope of those rights.  (See *U.S. v. Marzzarella* (3d Cir. 2010) 614 F.3d 85, 88, fn. 3 (*Marzzarella*).)  *Heller* was careful to point out that, like the First Amendment's right to freedom of speech, the Second Amendment's right to bear arms is *not* unlimited (*Heller,* at p. 595) and its protections do not extend to *any* type of weapon.  *Heller* cited with approval its previous

---

2      The parties agree that our standard of review is de novo because the question presented is a matter of law.  (*People v. Lujan* (2012) 211 Cal.App.4th 1499, 1505.)

decision in *U.S. v. Miller* (1939) 307 U.S. 174 (*Miller*), in which the Supreme Court held

the Second Amendment did *not* protect an individual's right to transport an unregistered

short-barreled shotgun in interstate commerce (*Heller,* at pp. 621-623), explaining "the

*type of weapon at issue* [in *Miller*] was not eligible for Second Amendment protection:

'In the absence of any evidence tending to show that [the] possession or use of a [short-

barreled shotgun] at this time has some reasonable relationship to the preservation or

efficiency of a well regulated militia, we cannot say that the Second Amendment

guarantees the right to keep and bear *such an instrument*.' " (*Heller,* at p. 622, quoting

*Miller, supra*, 307 U.S. at p. 178, italics added by *Heller*.)

The *Heller* court then elaborated on the *types* of weapons protected by the Second

Amendment:

> "We may as well consider at this point . . . *what* types of weapons
> *Miller* permits. Read in isolation, *Miller's* phrase 'part of ordinary
> military equipment' could mean that only those weapons useful in
> warfare are protected. That would be a startling reading of the
> opinion, since it would mean that the National Firearms Act's
> restrictions on machineguns (not challenged in *Miller*) might be
> unconstitutional, machineguns being useful in warfare in 1939. We
> think that *Miller's* 'ordinary military equipment' language must be
> read in tandem with what comes after: '[O]rdinarily when called for
> [militia] service [able-bodied] men were expected to appear bearing
> arms supplied by themselves and of the kind in common use at the
> time.' [Citation.] The traditional militia was formed from a pool of
> men bringing arms 'in common use at the time' for lawful purposes
> like self-defense. 'In the colonial and revolutionary war era, [small-
> arms] weapons used by militiamen and weapons used in defense of
> person and home were one and the same.' [Citation.] Indeed, that is
> precisely the way in which the Second Amendment's operative
> clause ['the right of the people to keep and bear Arms, shall not be
> infringed'] furthers the purpose announced in its preface ['[a] well
> regulated Militia, being necessary to the security of a free State'].
> We therefore read *Miller* to say only that the Second Amendment

does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." (*Heller*, *supra*, 554 U.S. at pp. 624-625.)

The *Heller* Court continued: "We also recognize another important limitation on the right to keep and carry arms. *Miller* said, as we have explained, that the sorts of weapons protected were those 'in common use at the time.' [Citation.] We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.' [Citations.] [¶] . . . It may be objected that if weapons that are most useful in military service—M–16 rifles and the like—may be banned, then the Second Amendment right is completely detached from the prefatory clause. But as we have said, the conception of the militia at the time of the Second Amendment's ratification was the body of all citizens capable of military service, who would bring the sorts of lawful weapons that they possessed at home to militia duty. It may well be true today that a militia, to be as effective as militias in the 18th century, would require sophisticated arms that are highly unusual in society at large. Indeed, it may be true that no amount of small arms could be useful against modern-day bombers and tanks. But the fact that modern developments have limited the degree of fit between the prefatory clause and the protected right cannot change our interpretation of the right." (*Heller*, *supra*, 554 U.S. at pp. 627-628.)

We construe *Heller* as standing for the proposition that the right secured by the Second Amendment is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose" (*Heller, supra,* 554 U.S. at p. 626), but is instead the right to possess and carry weapons typically possessed by law-abiding citizens

5

for lawful purposes such as hunting or self-defense. (*Id*. at pp. 628-630.) *Heller* concluded the Second Amendment protected the right to possess a handgun in one's home, because handguns are a "class of 'arms' " overwhelmingly chosen by American society for the lawful purpose of self-defense (*Heller,* at pp. 528-530) and were the type of small arms " 'in common use at the time' " (*id.* at p. 627) that citizens, when called to militia service, were expected to bring with them when called to serve. However, *Heller* simultaneously approved *Miller's* observation that the Second Amendment does *not* protect those weapons not typically possessed by law-abiding citizens for lawful purposes, and specifically referenced M-16 rifles as weapons that could properly be banned without offending the Second Amendment under "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.' " (*Heller,* at p. 627.)

*People v. James*

In *People v. James* (2009) 174 Cal.App.4th 662 (*James*), the court applied *Heller* and concluded the AWCA's bans on semi-automatic assault weapons and .50 BMG rifles did not offend the Second Amendment because these were weapons outside the scope of protection conferred by the Second Amendment. *James* first extensively reviewed the legislative findings and factual bases that prompted the ban on those weapons (*James,* at pp. 670-674), and then turned to examining whether the ban violated the Second Amendment as construed by *Heller*. *James* noted that, under *Heller*, it is clear the Second Amendment right does not protect possession of a military M–16 rifle, and then concluded it "[l]ikewise . . . does not protect the right to possess assault weapons . . . . As we have already indicated, in enacting the [AWCA] . . . , the Legislature was specifically

6

concerned with the unusual and dangerous nature of these weapons.  An assault weapon 'has such a high rate of fire and capacity for firepower that its function as a legitimate sports or recreational firearm is substantially outweighed by the danger that it can be used to kill and injure human beings.'  ([Pen. Code,] § 12275.5, subd. (a).) . . .  These are not the types of weapons that are typically possessed by law-abiding citizens for lawful purposes such as sport hunting or self-defense; rather, these are weapons of war." (*James,* at p. 676.)  *James* also cited post-*Heller* precedent to support its conclusion, noting that *U.S. v. Fincher* (8th Cir. 2008) 538 F.3d 868 held Fincher's possession of a machine gun was "not protected by the Second Amendment" because "[m]achine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use." (*Fincher,* at p. 874.)  Although *James* acknowledged the "fully automatic nature of a machine gun renders such a weapon arguably more dangerous and unusual than a semiautomatic assault weapon, that observation does not negate the fact that assault weapons, like machine guns, are not in common use by law-abiding citizens for lawful purposes and likewise fall within the category of dangerous and unusual weapons that the government can prohibit for individual use. . . .  In any event, assault weapons . . . are at least as dangerous and unusual as the short-barreled shotgun at issue in [*Miller*]." (*James,* at pp. 676-677.)

B. Standards for Scrutinizing Validity of Legislative Enactments

At the outset, the parties dispute whether the validity of the AWCA's ban on AK series weapons should be assessed using a "strict scrutiny" standard (applied in *U.S. v.*

7

*Engstrum* (D. Utah 2009) 609 F.Supp.2d 1227, 1231 to a statute barring possession of a firearm for persons convicted of domestic violence), or the "intermediate scrutiny" standard (applied in *People v. Ellison* (2011) 196 Cal.App.4th 1342, 1347 to a statute concerning concealed possession of a firearm), or whether Zondorak's challenge may only be assessed under distinct constitutional protections, such as the "rational basis" standard (applied in *Kasler v. Lockyer* (2000) 23 Cal.4th 472, 478-491, to a pre-*Heller* challenge to the AWCA) under equal protection principles.

We agree with the framework outlined in *Marzzarella, supra,* 614 F.3d 85 for selecting the appropriate level of scrutiny. In *Marzzarella,* the court recognized *Heller* "declined to fully define the scope of the right to possess firearms, [but] it did caution that the right is not absolute." (*Marzzarella,* at p. 89.) *Marzzarella* then explained that, "As we read *Heller*, it suggests a two-pronged approach to Second Amendment challenges. First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. [Citing *U.S. v. Stevens* (3d Cir. 2008) 533 F.3d 218, 233] (recognizing the preliminary issue in a First Amendment challenge is whether the speech at issue is protected or unprotected). If it does not, our inquiry is complete. [However], [i]f it does, we evaluate the law under some form of means-end scrutiny." (*Ibid.*) Other courts have adopted the same two-step analysis. (See, e.g., *Ezell v. City of Chicago* (7th Cir. 2011) 651 F.3d 684, 702-703 ["if the government can establish that a challenged firearms law regulates activity falling outside the scope of the Second Amendment right . . . then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment

8

review"]; *Heller v. District of Columbia* (D.C. Cir. 2011) 670 F.3d 1244, 1252 ["We accordingly adopt, as have other circuits, a two-step approach to determining the constitutionality of the District's gun laws.  [Citations.]  We ask first whether a particular provision impinges upon a right protected by the Second Amendment; if it does, then we go on to determine whether the provision passes muster under the appropriate level of constitutional scrutiny."].)

Under this two-step approach, we first examine the "threshold inquiry . . . whether [the challenged law] regulates conduct that falls within the scope of the Second Amendment.  In other words, we must determine whether the possession of [the banned weapon] in the home is protected by the right to bear arms."  (*Marzzarella, supra,* 614 F.3d at p. 89.)

C. Analysis

We agree with *James* that the ban on AK series rifles does not impinge on rights protected by the Second Amendment because assault weapons "are at least as dangerous and unusual as the short-barreled shotgun" (*James, supra*, 174 Cal.App.4th at p. 677), which *Miller* concluded (with apparent approval from *Heller*) was outside the scope of the Second Amendment's guarantee. (*James,* at pp. 674-675.)  Indeed, assault weapons are only slightly removed from M-16 type weapons that *Heller* likewise appeared to conclude were outside the scope of the Second Amendment's guarantee.  Because we conclude the AWCA does not "impose[] a burden on conduct falling within the scope of the Second Amendment's guarantee," as construed by *Heller,* "our [Second Amendment]

9

inquiry is complete" and an evaluation of the validity of the law under either strict scrutiny or intermediate scrutiny is unnecessary. (*Marzzarella, supra,* 614 F.3d at p. 89.)

Zondorak argues we should reject *James's* conclusion for numerous reasons. First, he asserts there was no basis for *James* to conclude an AK series rifle is sufficiently "dangerous and unusual" as to fall outside the classes of weapons protected by the Second Amendment. Accordingly, his weapon is within the types of weapons deserving of Second Amendment protection, thereby requiring that legislation burdening possession of that rifle survive analysis under strict or intermediate scrutiny. However, Zondorak's argument overlooks that *James* actually concluded semi-automatic assault weapons such as an AK series rifle are "at least as dangerous and unusual as the short-barreled shotgun at issue in [*Miller*]" (*James, supra,* 174 Cal.App.4th at p. 677), and *James* reasoned that if the latter class of weapon may permissibly be banned under the Second Amendment as construed by *Heller*, semi-automatic assault weapons such as an AK series rifle may also be banned under *Heller* as outside the intended ambit of arms the people are entitled to "keep and bear." The extensive legislative history cited by *James* supports its conclusion that AK-47's "are at least as dangerous and unusual as the short-barreled shotgun," and we agree with that assessment. *Heller* suggested "M–16 rifles and the like" may be banned because they are " 'dangerous and unusual' " (*Heller, supra*, 554 U.S. at p. 627), and although semi-automatic firearms are not identical to automatic M–16s, insofar as the former fire only one shot with each pull of the trigger, "semi-automatics still fire almost as rapidly as automatics." (*Heller v. District of Columbia, supra,* 670 F.3d at p. 1263.)

10

Zondorak also appears to assert that California's ban on AK series rifles is unconstitutional to the extent it carves out no exceptions for possession of those weapons within the homes of otherwise law-abiding citizens for self-defense. Although *Heller* adverted to self-defense as a core interest promoted by the Second Amendment (*Heller, supra*, 554 U.S. at p. 599), other courts have acknowledged that "it cannot be the case that possession of a firearm in the home for self-defense is a protected form of possession under all circumstances. By this rationale, any type of firearm possessed in the home would be protected merely because it could be used for self-defense. Possession of machine guns or short-barreled shotguns—or any other dangerous and unusual weapon— so long as they were kept in the home, would then fall within the Second Amendment. But the Supreme Court has made clear the Second Amendment does not protect those types of weapons." (*Marzzarella, supra,* 614 F.3d at p. 94.) We agree that, when a weapon falls outside the class of weapons entitled to Second Amendment protections, neither the place in which it is stored nor the purposes for which it might be used imbues the weapon with Second Amendment protections.

Zondorak also appears to assert that California's ban on AK series rifles is unconstitutional because, according to expert testimony he introduced below, there are many weapons that may fall outside the ambit of section 12880's bans on semi-automatic assault weapons even though these excluded weapons are (or can be converted into) weapons as dangerous as the AK series rifles. However, this observation appears to confuse whether a particular legislative enactment is invalid as impinging on Second Amendment rights with the distinct issue of whether that enactment might be invalid

11

under the equal protection clause, and is thus irrelevant to our analysis because Zondorak has not raised any equal protection claim. Even had Zondorak raised an equal protection challenge, that claim would fail because "[n]othing compels the state 'to choose between attacking every aspect of a problem or not attacking the problem at all.' [Citation.] Far from having to 'solve all related ills at once' [citation], the Legislature has 'broad discretion' to proceed in an incremental and uneven manner without necessarily engaging in arbitrary and unlawful discrimination [citations]." (*People v. Barrett* (2012) 54 Cal.4th 1081, 1110.) Our Supreme Court has already rejected an equal protection challenge to the AWCA (*Kasler v. Lockyer, supra,* 23 Cal.4th at pp. 478-491) and, although *Kasler* was decided before *Heller*, we are convinced that *Kasler's* equal protection analysis of the AWCA remains controlling precisely because (for the reasons previously discussed) we do not construe *Heller* as conferring on citizens a Second Amendment right to possess an AK series rifles. We conclude that the fact some models with characteristics similar to Zondorak's weapon may have escaped the assault weapons ban does not invalidate a ban on weapons otherwise unprotected by the Second Amendment.

Zondorak raises a series of additional arguments asserting California's ban on AK series rifles is invalid, but each of these arguments appears to be a variant of the same theme: that California's ban is impermissible because Zondorak needs to have equivalent firepower to defend himself against others who have lawfully (or unlawfully) acquired semi-automatic weapons. For example, Zondorak asserts California's ban on his possession of an AK series rifle is impermissible because some persons in California are legally entitled (under various statutory exemptions) to possess the same weapon, and is

impermissible because others may lawfully (or unlawfully) acquire and bring those weapons into California.  However, we do not interpret *Heller* as conferring Second Amendment protections on classes of weapons merely because such weapons may have utility in leveling the playing field.  To the contrary, *Heller's* observations that "weapons that are most useful . . . may be banned" and that "it may be true that no amount of small arms could be useful against modern-day bombers and tanks [b]ut [that] fact . . . cannot change our interpretation of the right [conferred by the Second Amendment]" (*Heller, supra*, 554 U.S. at pp. 627-628) convinces us Zondorak's "need"-based argument is incompatible with the touchstone for the types of weapons entitled to protection under the Second Amendment.

We conclude the AWCA's ban on AK series rifles is not invalid under the Second Amendment, and affirm the judgment.

DISPOSITION

The judgment is affirmed.


McDONALD, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.


13