Filed 12/26/23  P. v. Triana CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ERIK TRIANA,<br><br>        Defendant and Appellant. | A166301<br><br><br>(Contra Costa County Super. Ct. No. 012200274) |

In January 2022, California State Senator Scott Weiner introduced a bill to expand access to vaccinations by allowing teenagers to go on their own to get vaccinated.  Six days later, Erik Triana posted a threatening message on the senator's website: "Vax my child without my permission and expect a visit from me and my rifle."  It was signed, "Second Amendment."

Officers traced the threat to Triana and obtained a warrant to search his residence.  The ensuing search of his house and SUV produced the following: a rifle bag containing a loaded short-barreled, AR-15 style assault rifle with nine additional loaded magazines; a loaded assault handgun; a backpack containing a loaded pistol with no serial number and two additional magazines; multiple parts, molds, and tools for making, assembling, and maintaining firearms; over 700 rounds of ammunition, including penetrating rounds used to go through wood, glass, and structures; a handwritten diagram for making a

1

silencer; and a book on how to make Molotov cocktails and other projectile weapons using household items.  Only one of the guns, a Smith & Wesson, was registered to Triana.

Found guilty of multiple firearms offenses, Triana contends his convictions violate the Second Amendment to the United States Constitution as construed in *New York State Rifle & Pistol Association, Inc. v. Bruen* (2022) 597 U.S. 1 (*Bruen*) and *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*).  We follow the unanimous consensus in this state in rejecting his contentions, and therefore affirm.

## BACKGROUND

Triana was charged with threatening a state official (Pen. Code, § 76, subd. (a))[1] and making criminal threats (§ 422, subd. (a)), both enhanced for committing offenses in multiple counties; and two counts each of possessing a concealed firearm in a vehicle (§ 25400, subds. (a)(1), (c)(6)), possessing an assault weapon (§ 30605, subd. (a)), and manufacturing or assembling an unregistered firearm (§ 29180, subd. (g)).  After the trial court overruled Triana's demurrer to the weapons charges, a jury found him guilty on all charges except making criminal threats.

## DISCUSSION

### A.

We turn first to Triana's argument that California's concealed-carry law violates the Second Amendment as recently construed in *Bruen, supra,* 597 U.S. 1.  We review this question of law independently, presuming the relevant statutes are constitutional unless their unconstitutionality is clearly, positively, and unmistakably demonstrated.  (*People v. Bocanegra* (2023) 90 Cal.App.5th 1236, 1250 (*Bocanegra*).)  "Courts should exercise judicial restraint in passing upon the acts of coordinate

---

[1] Undesignated statutory references are to the Penal Code.

branches of government; the presumption is in favor of constitutionality, and the invalidity of the legislation must be clear before it can be declared unconstitutional." (*Dittus v. Cranston* (1959) 53 Cal.2d 284, 286.)

## 1.

California has a multifaceted statutory scheme for regulating firearms. (*In re D.L.* (2023) 93 Cal.App.5th 144, 153 (*D.L.*).) The aspect of that scheme at issue here, section 25400, subdivision (a), prohibits carrying a concealed firearm in public on the person or in a vehicle. Nonetheless, an individual may legally carry a concealed firearm so long as they obtain a concealed-carry license. (§§ 25655, 26150 et seq.; *see D.L.*, supra, at pp. 153-155.) To that end, license applicants must prove to the county sheriff (§ 26150) or municipal police department (§ 26155) that they are "of good moral character;" have a sufficient connection to the county or city; have completed a qualifying firearms training course; and that "[g]ood cause exists for the issuance of the license." (§§ 26150, subd. (a), 26155.) Applicants must also submit to fingerprinting and pass background checks. (*D.L.,* at p. 155.)

## 2.

In *Heller, supra,* 554 U.S. at pp. 628-629, 636, the United States Supreme Court for the first time identified a Second Amendment right for individuals to possess handguns in their homes. Nonetheless, the court also reaffirmed the constitutionality of many longstanding regulatory restrictions on the right to bear arms, including prohibitions on the possession of firearms by felons and the mentally ill, carrying firearms in "sensitive places" such as schools and government buildings, and laws regulating the commercial sale of arms. (*Id.* at pp. 626-627 & fn. 26.)

More recently, the court in *Bruen* held that Second Amendment protections extend to an individual's right to carry a handgun for self-defense *outside* of the home. (*Bruen, supra,* 597 U.S. at p. __ [142 S.Ct. at p. 2122].) Announcing a new framework for analyzing Second Amendment challenges, the *Bruen* majority held the government may not regulate conduct that falls within the amendment's "plain text" unless it demonstrates the regulation is "consistent with this Nation's historical tradition of firearm regulation." (*Id.* at p. __ [142 S.Ct. at p. 2126].) Conduct within the scope of the Second Amendment is thus protected unless the government can identify an "American tradition" justifying its regulation. (*Id.* at p. __ [142 S.Ct. at p. 2138].)

Applying this test, the court found New York's requirement that an applicant show "proper-cause" for a license to publicly carry handguns did not meet that burden. (*Bruen, supra,* 597 U.S. at p. __ [142 S.Ct. at p. 2156.) At the same time, however, it clarified that the same was not true of licensing regimes "designed to ensure only that those bearing arms in the jurisdiction are, in fact, ' law-abiding, responsible citizens,' " contain only " 'narrow, objective, and definite standards' guiding licensing officials," and do not involve the " 'appraisal of facts, the exercise of judgment, and the formation of an opinion.' " (*Id.* at p.__, fn. 9 [142 S.Ct. at p. 2138, fn. 9]; see also *id.* at p. __ [142 S.Ct. at p. 2161 (conc. opn. of Kavanaugh, J.) [*Bruen* "does not *prohibit* States from imposing licensing requirements for carrying a handgun for self-defense" (italics added)].)

**3.**

In *Bruen*'s immediate aftermath, California's Attorney General instructed the responsible agencies to stop requiring proof of good cause for a concealed-carry license, but to continue enforcing the remaining statutory prerequisites. (*D.L., supra,* 93 Cal.App.5th at pp. 148, 161-162.) Since then, every California

4

appellate court to consider the point has agreed that the now-invalid good cause requirement is severable from this state's remaining statutory requirements for obtaining a concealed-carry license. (*In re T.F.-G* (2023) 94 Cal.App.5th 893, 916 & fn. 19; *People v. Mosqueda* (2023) __ Cal.App.5th__, 2023 WL 8014119 p. *10; *D.L.,* at pp. 148, 163-165.) We agree with their analysis, and accordingly conclude California's concealed-carry regulations remain constitutionally sound but for the licensing scheme's now inoperative good cause element.

Triana disagrees. He maintains *Bruen* rendered the statutory prohibition against carrying concealed firearms unconstitutional in its entirety because "no colonial regulation of firearms . . . would have either [*sic*] prevented a person from having a firearm in a motor vehicle." We disagree. Triana's argument fails to acknowledge that California law does not effect a blanket prohibition on carrying concealed guns in vehicles; to the contrary, individuals are free to do so long as they first obtain a concealed-carry license. *Bruen* makes clear that states remain free, within constitutional boundaries, to impose such licensing requirements: "[N]othing in our analysis should be interpreted to suggest the unconstitutionality" of statutory licensing regimes that "do not require applicants to show an atypical need for armed self-defense." (*Bruen, supra,* 597 U.S. at p. __, fn. 9 [142 S.Ct. at p. 2138, fn. 9.)

Triana seemingly concedes as much in his reply brief. However, he contends the concealed-carry statute is nonetheless unconstitutional as applied to him because "the 'good cause' requirement constituted an improper impediment" to the exercise of his Second Amendment rights. The contention fails. Nothing on the face of the pleadings indicates Triana ever applied for a concealed-carry permit under the pre-*Bruen* regimen, was dissuaded by the requirement from applying, applied and was turned down, or could not have established good cause had he

applied.  In short, his argument fails for the reason the same contention failed to persuade the *D.L.* court: Triana's conviction for carrying a concealed weapon simply "had nothing to do with the 'good cause' licensing requirement."  (*D.L., supra,* 93 Cal.App.5th at p. 165.)

**B.**

As noted above, Triana was also convicted under section 30605, subdivision (a) of two counts of possessing an assault weapon.[2]  He contends the provision violates his Second Amendment right to bear arms under *Bruen, supra,* 597 U.S. 1 and *Heller, supra,* 554 U.S. at p. 626 because, in essence, assault weapons are commonly owned by law-abiding citizens and there is no historical tradition of banning them.  The contention has been soundly rejected by the courts of this state, both before and after *Bruen.*  (*Bocanegra, supra,* 90 Cal.App.5th at p. 1256; *People v. Zondorak* (2013) 220 Cal.App.4th 829, 836-839 (*Zondorak*); *People v. James* (2009) 174 Cal.App.4th 662, 664, 670-674 (*James*).)  We follow suit.

*Heller* reaffirmed that the Second Amendment right to keep and bear arms is not unlimited.  (*Heller, supra,* 554 U.S. at p. 595.)  As it observed, "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained" that the constitutional right to bear arms is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  (*Id.* at p. 626; accord, *Bocanegra, supra,* 90

---

[2] Under section 30605, subdivision (a), "Any person who, within this state, possesses any assault weapon, except as provided in this chapter, shall be punished by imprisonment in a county jail for a period not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170."  Sections 30510 and 30515 define "assault weapon" for purposes of this provision.

Cal.App.5th at pp. 1246-1248; *Zondorak*, *supra,* 220 Cal.App.4th at pp. 832-834; *James, supra,* 174 Cal.App.4th at p. 674.)  While the *Heller* court held the District of Columbia could not constitutionally ban the possession of handguns in the home (*Heller,* at p. 635), it also observed that "those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns," are excluded from Second Amendment protection.  (*Id.* at p. 625.)  Further, recognizing that "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons' " places an "important limitation on the right to keep and carry arms," the court indicated that "weapons that are most useful in military service--M-16 rifles and the like-- may be banned." (*Id.* at p. 627.)

Since then, *James, Zondorak,* and *Bocanegra* have each concluded the Second Amendment right to bear arms as construed in *Heller* does not extend to assault weapons.  (*James, supra*, 174 Cal.App.4th at pp. 664, 670-674 [semiautomatic assault weapons and .50-caliber BMG rifles]; *Zondorak, supra,* 220 Cal.App.4th at pp. 834, 836-839 [AK series automatic rifles]; *Bocanegra, supra,* 90 Cal.App.5th at pp. 1244, 1250-1253, 1256 [assault weapons].)  This is because, as most recently explained in *Bocanegra,* those firearms are dangerous and unusual weapons not typically possessed by law-abiding citizens for lawful purposes; rather, they are " 'only slightly removed from M-16-type weapons that *Heller* likewise appeared to conclude were outside the scope of the Second Amendment's guarantee.' " (*Bocanegra,* at pp. 1250-1251.) And, as stated in *Zondorak* and *James*, the assault weapons prohibited by section 30605, subdivision (a) " 'are at least as dangerous and unusual as the short-barreled shotgun' [citation], which *Miller*[3] concluded (with

_____

[3] *United States v. Miller* (1939) 307 U.S. 174.  The *Heller* majority rejected the view that, under *Miller*'s interpretation, the Second Amendment protects the use and ownership of firearms only for certain military purposes (*Heller, supra,* 554 U.S. at pp.

7

apparent approval from *Heller*) was outside the scope" of the Second Amendment. (*Zondorak*, at p. 836, quoting *James*, at pp. 674-675)

Triana, relying various federal court opinions, argues assault weapons have become so ubiquitous in this country that they may not constitutionally be banned. In his view, "[a]s semi-automatic rifles . . . are in common use by law-abiding citizens for self-defense, they clearly qualify for Second Amendment protection." The argument fails. Triana has presented no evidence or cognizable empirical support for his claim that millions of law-abiding citizens possess and use assault weapons for lawful purposes. Instead, he relies primarily on the conclusion in *Heller v. District of Columbia* (2011) 670 F.3d 1244, 1261 (*Heller II*) that these weapons are in "common use," and observes that California is in a small minority of states to regulate or ban them. (Triana does not acknowledge that the *Heller II* court also found the record was inadequate to show the semi-automatic rifles with high-capacity magazines at issue there were "commonly used or are useful specifically for self-defense or hunting and therefore whether the prohibitions of certain semi-automatic rifles and magazines holding more than ten rounds meaningfully affect the right to keep and bear arms." (*Ibid.*).)

*Heller II* and the other federal authorities Triana cites are not binding on this court (*Felisilda v. FCA US LLC* (2020) 53 Cal.App.5th 486, 497), and we decline to rely on the factual conclusions in those cases absent evidence in the record before us of the number of assault weapons in this country or the number in common use. But even assuming they established the

---

621-622), reading the opinion instead to "say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." (*Id.* at p. 625; but see *id.* at pp. 636-681 (dis. opn. of Stevens, J.).)

widespread possession of such weapons, a finding that a firearm is in "common use" does not end the inquiry into whether it falls within the ambit of the Second Amendment's protections. The question, rather, is whether the weapon is in " 'common use' . . . *for lawful purposes* like self-defense." (*Heller, supra,* 554 U.S. at p. 624, italics added.) Triana offers no support for his claim that the firearms prohibited under section 30605, subdivision (a) are weapons that law-abiding Americans typically possess and use for lawful purposes. On this record, there is no reasoned basis on which to reject this state's unanimous precedent that *Heller's* exclusion of machine guns and M-16-type weapons from Second Amendment protection applies to the assault weapons prohibited under California law.

These points dispose of Triana's contentions, so we have no reason to reach the Attorney General's assertions that assault weapons are not typically possessed by law-abiding citizens for lawful purposes and thus are not protected by the Second Amendment (see *Bocanegra, supra,* 90 Cal.App.5th at p. 1250); the firearm configurations, attachments, accessories, and parts prohibited by section 30605 are not bearable "arms" subject to the amendment; and, alternatively, section 30605 withstands constitutional scrutiny because it is consistent with our nation's history of regulating particularly dangerous and unusual weapons. (See *Bruen, supra,* 597 U.S. at pp. __ [142 S.Ct. at pp. 2131-2132, 2135-2137]; *Heller, supra,* 554 U.S. at p. 627.)

## DISPOSITION

The judgment is affirmed.

                                                        BURNS, J.

WE CONCUR:


JACKSON, P.J.
SIMONS, J.

*People v. Triana* (A166301)