Filed 5/13/24  P. v. Olson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082081 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD294958) |
| PERRY JOEL OLSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, David L. Berry, Judge.  Reversed and dismissed in part, affirmed in part, and remanded with directions.

Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Kristen Ramirez, Deputy Attorneys General, for Plaintiff and Respondent.

Perry Joel Olson was convicted for possessing an assault weapon (Pen. Code, § 30605, subd. (a); count 1) and carrying a loaded firearm (§ 25850, subd. (a); count 3.) He appeals on three grounds.

First, Olson claims his conviction for carrying a loaded firearm must be reversed and dismissed because no evidence was presented on an element of the offense. We accept the People's concession to this claim. Second, Olson argues his conviction for possessing an assault weapon must be reversed because section 30605, part of the Roberti-Roos Assault Weapons Control Act of 1989 (the Act), violates the Second Amendment of the United States Constitution under the framework of *N.Y. State Rifle & Pistol Ass'n v. Bruen* (2022) 597 U.S. 1 (*Bruen*). We conclude Olson failed to satisfy his burden of demonstrating error, given the insufficiency of the record and briefing on this issue. Finally, Olson asserts his trial counsel provided ineffective assistance by failing to object to section 30605's constitutionality. However, the trial court was bound by case law finding section 30605 constitutional, so trial counsel did not provide ineffective assistance by failing to make a meritless argument. We thus reverse and dismiss the judgment as to count 3, affirm the judgment as to count 1, and remand with directions.

I.

In June 2022, two San Diego Police Department officers on patrol contacted Olson, who was sleeping in the back of his vehicle, because his vehicle's registration was expired. The officers told Olson they had to impound his vehicle. As Olson was retrieving his belongings, one officer noticed a firearm in Olson's waistband. The officer detained Olson and seized the firearm, a loaded handgun. The officers searched a rifle bag Olson had removed from the vehicle and found, in addition to a shotgun and a variety of ammunition, a center fire semiautomatic assault rifle, capable of receiving a

2

detachable magazine, with a forward pistol grip, a pistol grip protruding conspicuously beneath the rifle, a telescoping buttstock, and a muzzle brake.

Olson and the People waived their right to a jury trial. At the March 2023 bench trial, Olson testified he was a homeless military veteran who had been living in California for roughly a week before his arrest. Although he had firearm permits in other states, he had not yet been able to comply with California gun laws.

The trial court found Olson guilty of counts 1 and 3. At sentencing, the court reduced count 1 to a misdemeanor, sentenced Olson to three days of custody with the sheriff (time served), declined to impose probation, and ordered Olson's firearms destroyed.

## II.

## A.

Olson first argues the trial court, in convicting him of carrying a loaded firearm, misconstrued an element of the offense for which no evidence was presented, requiring reversal and dismissal of his conviction. We accept the People's concession and agree that count 3 must be reversed and dismissed.

"A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while *in any public place or on any public street in an incorporated city*." (§ 25850(a), italics added.) At the prosecutor's urging, the trial court interpreted the "in an incorporated city" requirement to apply only to a "public street" and not a "public place," and the court found Olson guilty on the basis that he was in a public place. In so doing, the trial court "want[ed] the record clear" that "no evidence was presented, no judicial notice was taken that the city of San Diego is an incorporated city."

3

The trial court, however, was bound to follow *People v. Knight* (2004) 121 Cal.App.4th 1568 (*Knight*). *Knight* rejected the very construction of section 12031(a)(1) (subsequently recodified as § 25850(a)) the prosecutor incorrectly advanced and that the trial court adopted. (*Id.* at p. 1576.) We therefore accept the People's concession that (1) section 25850(a) was misconstrued and (2) insufficient evidence—indeed, as the People acknowledge, "no evidence"—was presented as to whether the City of San Diego is an incorporated city. Accordingly, we reverse and dismiss Olson's conviction for count 3. (*People v. Anderson* (2009) 47 Cal.4th 92, 104 [double jeopardy prohibits retrial upon reversal for insufficient evidence].)

B.

Olson next argues his conviction for possessing an assault weapon must be reversed because section 30605(a) facially violates the Second Amendment under *Bruen*. Olson acknowledges his trial counsel failed to raise this argument below. Nonetheless, the People assume the challenge "is not forfeited because facial constitutional challenges may generally be raised for the first time on appeal."

Generally, a criminal defendant forfeits a challenge—even on constitutional grounds—not raised in the trial court. (*In re Sheena K.* (2007) 40 Cal.4th 875, 880-881.) Our Supreme Court has recognized that cases "involv[ing] pure questions of law that can be resolved without reference to the particular . . . record developed in the trial court," however, fall within a narrow exception to the forfeiture rule. (*People v. Welch* (1993) 5 Cal.4th 228, 235.) "Facial" challenges to a statute's constitutionality, which "consider[ ] only the text of the measure itself" and not its application to certain scenarios (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084), fall within this exception.

4

Here, even accepting Olson's Second Amendment challenge is facial (see *In re D.L.* (2023) 93 Cal.App.5th 144,157 [recognizing constitutional challenges to gun regulations based on *Bruen* as facial challenges]), the record and briefing are inadequate to facilitate the intensive textual and historical analysis *Bruen* requires.

The Second Amendment protects "the right of the people to keep and bear arms." (U.S. Const., 2nd Amend.)  In *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*), the Supreme Court "held that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense." (*McDonald v. City of Chicago* (2010) 561 U.S. 742, 791.)  Two years later, the Supreme Court confirmed that right applies equally to the states.  (*Ibid.*)  After *Heller*, most courts adopted a "'two-step' framework . . . combin[ing] history with means-end scrutiny" in analyzing Second Amendment challenges.  (*Bruen*, *supra*, 597 U.S. at p. 17.)

*Bruen*, however, disclaimed means-end scrutiny in Second Amendment cases as "one step too many." (*Bruen*, *supra*, 597 U.S. at p. 19.)  Although Olson asserts *Bruen* "announced a new standard," that is not so; *Bruen* itself says it merely "reiterate[d]" and "made . . . more explicit" the analytical approach set forth in *Heller*, "which demands a test rooted in the Second Amendment's text, as informed by history." (*Bruen*, at pp. 19, 24, 31.)

Under *Bruen*, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." (*Bruen*, *supra*, 597 U.S. at p. 24.)  Determining whether that presumption attaches is "*Bruen* step one." (*United States v. Alaniz* (9th Cir. 2023) 69 F.4th 1124, 1128 (*Alaniz*).)  At *Bruen* step two, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." (*Bruen*, at p. 24.)  In *Bruen*, step

5

one was undisputed.  (*Id.* at pp. 31-33.)  The Supreme Court accordingly focused on assessing the State of New York's historical evidence to determine whether the challenged statute accorded with founding-era firearm regulations.  (*Id.* at pp. 33-70.)

In the roughly two years since, state and federal courts across the country have struggled to apply *Bruen*—including at step one, given *Bruen*'s limited analysis of that step.  (See, e.g., *In re Appeal of the Gun Range, LLC* (Pa. Commw. Ct., Feb. 27, 2024, No. 90 C.D. 2021) 2024 Pa.Commw.Lexis 68, at pp. *18-*22 [analyzing whether Second Amendment protects an implied right to engage in commercial sale of arms at step one]; *United States v. Jackson* (D.Md. 2023) 661 F.Supp.3d 392, 400-405 [grappling with whether Second Amendment applies to indicted, as opposed to convicted, persons at step one].)  However, federal district court decisions demonstrate that deciding the issues most courts agree are relevant to step one's "threshold" determination—"whether the challenger is part of the people whom the Second Amendment protects, whether the weapon at issue is in common use today for self-defense, and whether the proposed course of conduct falls within the Second Amendment" (*Alaniz*, *supra*, 69 F.4th at p.1128 [cleaned up])—requires, unlike a typical facial challenge, looking beyond the text of the challenged regulation itself.

The two California district court decisions that have analyzed the Act's constitutionality post-*Bruen* are representative.  *Miller v. Bonta* (S.D.Cal., Oct. 19, 2023, No. 19-cv-01537 BEN (JLB)) 2023 U.S.Dist. Lexis 188421, at p. *98 (*Miller*), found the Act unconstitutional.  In assessing both steps, the court relied at length on evidence—including the testimony of experts on gun violence and history—presented by the parties.  (See *id.* at pp. *67-*85.)  *Rupp v. Bonta* (C.D.Cal., Mar. 15, 2024, No. 8:17-cv-00746-JLS-JDE)

6

2024 U.S.Dist. Lexis 46430, at pp. *21-*93 (*Rupp*), came to the opposite conclusion, relying on a similarly detailed evidentiary record comprising expert opinion testimony.  *Bruen* itself acknowledged that courts, in deciding the legal questions raised in Second Amendment cases, were "entitled to decide a case based on the historical record *compiled by the parties.*"  (*Bruen, supra,* 597 U.S. at p. 25, fn. 6, italics added.)

Because Olson did not raise this challenge in the trial court, no such record exists here.  Nor does his appellate briefing make a meaningful effort to engage in *Bruen*'s history- and fact-intensive analysis.  In his opening brief, Olson simply claims that modern rifles like the AR-15, as the "'civilian version of the military's M-16 rifle,'" are not weapons "'most useful in military service'" and therefore cannot be banned as "'dangerous and unusual weapons.'"  (*Heller, supra,* 554 U.S. at pp. 627-628; *Staples v. United States* (1994) 511 U.S. 600, 603.)  He ignores California case law finding AR-15's "dangerous and unusual" and thus unprotected by the Second Amendment. (See *People v. James* (2009) 174 Cal.App.4th 662, 676-677 (*James*); *People v. Zondorak* (2013) 220 Cal.App.4th 829, 836-838 (*Zondorak*).)  Olson also asserts "there is no historical tradition of the regulation of non-military grade weapons."  But that statement is simply incorrect.  As the People note, *Heller* distilled from a much earlier U.S. Supreme Court case, *United States v. Miller* (1939) 307 U.S. 174, the rule that the Second Amendment does not protect weapons, like short-barreled shotguns, "not typically possessed by law-abiding citizens for lawful purposes."  (*Heller,* at p. 625.)  Olson's opening brief ultimately fails to meaningfully engage with *Bruen* step one and is therefore inadequate to meet his burden on appeal of establishing error.

Even if it is proper to consider Olson's citation to *Miller* on reply that assault weapons are not unusual because "Americans today own 24.4 million

7

modern rifles" (*Miller*, *supra*, Lexis 188421, at p. *5), the significance of that number, while seemingly large in isolation, "can accurately be assessed only when contextualized by a denominator," which Olson does not provide. (*Rupp*, *supra*, Lexis 46430, at p. *46.) Nor do Olson's appellate briefs meaningfully address what proportion of such modern rifles are used for self-defense as opposed to other uses, lawful or otherwise (see, e.g., *id.* at pp. *39-*45), or the meaningful distinctions, if any, in the operability of modern rifles as compared to regulatable military-grade weapons (see *Bevis v. City of Naperville* (7th Cir. 2023) 85 F.4th 1175, 1193-1197 [concluding, based on firing rate, ammunition used, kinetic energy, muzzle velocity, and range that challenger failed to establish the AR-15 is meaningfully different from the M-16]). Most courts post-*Bruen* have placed the burden at step one on the challenger to the gun regulation, and Olson's threadbare analysis cannot satisfy that burden. (See *Rupp,* at pp. *20-*21.)

Accordingly, as Olson failed to adequately brief his Second Amendment challenge on appeal, we cannot address its merits. (See *People v. Cabrera* (N.Y.Ct.App., Nov. 21, 2023, No. 65) 2023 N.Y. Lexis 1891, at pp. *21-*22 [declining to reach merits of facial challenge to gun regulation raised initially on appeal because "the record before us . . . does not permit a meaningful determination on the merits" given *Bruen*'s "complex inquiry"].)

Ultimately, the trial court is best suited to engage in the analysis *Bruen* requires, assisted by a record replete with relevant factual and historical evidence offered by the parties. Where such a record has been developed and the parties' briefs on appeal fully address *Bruen*'s two prongs, an appellate court can meaningfully assess the facial constitutionality of a challenged gun regulation. But such is not the case here.

## C.

Finally, Olson argues his trial counsel provided ineffective assistance of counsel in failing to challenge the constitutionality of section 30605(a) in the trial court. We conclude Olson's trial counsel did not provide ineffective assistance.

To establish ineffective assistance of counsel, the defendant must show both that: (1) "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms," and (2) "there is a reasonable probability"—one that "undermine[s] confidence in the outcome"—"that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694.) Failing "to make futile objections[ or] advance meritless arguments" is not ineffective assistance of counsel. (*People v. Jones* (1979) 96 Cal.App.3d 820, 827.)

Here, as the People acknowledge, objecting to the constitutionality of section 30605(a) was meritless and futile. California appellate court decisions "are binding . . . upon all the superior courts of this state." (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) United States Supreme Court decisions as to federal questions are binding on all federal and state courts. (*James v. City of Boise* (2016) 577 U.S. 306, 307.) Unless the United States Supreme Court has decided the same question differently from a California appellate court, the lower state courts must follow the law declared by the higher state courts. (*Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 507.)

At the time Olson was charged with and convicted of violating section 30605(a), *James* and *Zondorak* already had found section 30605 (or its substantively unchanged predecessor) did not violate the

Second Amendment right to bear arms because assault weapons are sufficiently "dangerous and unusual" to fall outside the scope of the Second Amendment's protection. (*James*, *supra*, 174 Cal.App.4th at pp. 676-677; *Zondorak*, *supra*, 220 Cal.App.4th at pp. 836-838.) We thus agree with the People and our sister court in *People v. Bocanegra* (2023) 90 Cal.App.5th 1236, 1256, that, because "[n]either *James* nor *Zondorak* relied on the means-end scrutiny component in rejecting constitutional challenges to the" Act, the cases are not directly abrogated by *Bruen*.

While *Bruen* denounced means-end scrutiny in analyzing Second Amendment challenges, it did not decide differently the same question resolved by *James* and *Zondorak*. *Bruen* fundamentally endorsed *Heller*'s text- and history-based approach to Second Amendment challenges, and both *James* and *Zondorak* applied *Heller* without resorting to means-end analysis. (*Bruen*, *supra*, 597 U.S. at p. 26; *James*, *supra*, 174 Cal.App.4th at pp. 676-677; *Zondorak*, *supra*, 220 Cal.App.4th at pp. 836-838.) The trial court, therefore, was bound to follow *James* and *Zondorak*'s determination that section 30605(a) is constitutional because assault weapons fall outside the scope of firearms protected by the Second Amendment, despite Olson's insufficiently developed argument to the contrary. Accordingly, it was not below an objective standard of reasonableness, and thus not ineffective assistance of counsel, for Olson's trial counsel to not challenge the constitutionality of section 30605(a).

## III.

We reverse and dismiss Olson's conviction on count 3 and affirm his conviction on count 1. We remand this matter to the trial court to amend the April 18, 2023 Felony Minutes – Pronouncement of Judgment consistent with this opinion.

CASTILLO, J.

WE CONCUR:

IRION, Acting P. J.

DO, J.

11