Filed 4/22/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B343746 |
| Plaintiff and Respondent, | (Super. Ct. No. 23F-04313) |
| | (San Luis Obispo County) |
| v. | |
| DYLAN JAMES HARDY, | |
| Defendant and Appellant. | |

Dylan James Hardy appeals following guilty pleas to unlawful assault weapon activity (Pen. Code[1], § 30600, subd. (a)), possession of a short-barreled shotgun (§ 33215), possession of a silencer (§ 33410), unlawful large capacity magazine activity (§ 32310, subd. (a)), and unlawful transfer of a handgun with no licensed firearms dealer (§ 27545). Appellant received an eight-year split sentence of four years in county jail and four years of mandatory supervision.

Appellant mounts facial constitutional challenges to his convictions under the Second Amendment. We reject those challenges and will affirm.

---

[1] Undesignated statutory references are to the Penal Code.

## DISCUSSION

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." (U.S. Const., 2d Amend.) This provision "guarantee[s] the individual right to possess and carry weapons in case of confrontation." (*District of Columbia v. Heller* (2008) 554 U.S. 570, 592 [171 L.Ed.2d 637] (*Heller*).) "[T]he Second Amendment right is fully applicable to the States." (*McDonald v. Chicago* (2010) 561 U.S. 742, 750 [177 L.Ed.2d 894].)

In *New York State Rifle & Pistol Assn., Inc. v. Bruen* (2022) 597 U.S. 1 [213 L.Ed.2d 387] (*Bruen*), the Court clarified the Second Amendment's application: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" (*Id.* at p. 24.)

A facial constitutional challenge "is the 'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'" (*United States v. Rahimi* (2024) 602 U.S. 680, 693 [219 L.Ed.2d 351].) Our review is de novo. (*People v. Anderson* (2024) 104 Cal.App.5th 577, 584.)

*Unlawful Assault Weapon Activity (§ 30600, subd. (a))*
*and Possession of a Short-Barreled Shotgun (§ 33215)*

Section 30600 prohibits conduct (e.g., manufacture, import) regarding assault weapons or .50 BMG rifles. (§ 30600, subd. (a)). Designated semiautomatic firearms (e.g., the Colt AR-15

2

series) and firearms with specific features (e.g., a semiautomatic, centerfire rifle with an overall length of fewer than 30 inches) qualify as assault weapons. (§§ 30510, 30515.) Section 33215 prohibits similar conduct regarding—and possession of—short-barreled shotguns or short-barreled rifles. (§ 33215.)

Appellant's challenges to these statutes fail because neither assault weapons nor short-barreled shotguns constitute arms entitled to Second Amendment protection.

In *Heller*, the Court explained the Second Amendment does not entail "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." (*Heller*, *supra*, 554 U.S. at p. 626.) Based on *United States v. Miller* (1939) 307 U.S. 174 [83 L.Ed. 1206] (*Miller*), *Heller* recognized the Second Amendment protects only "the sorts of weapons . . . 'in common use at the time.'" (*Heller*, *supra*, at p. 627.)

In *Miller*, the Court rejected a Second Amendment challenge to a federal indictment for transporting an unregistered short-barreled shotgun in interstate commerce. (*Miller*, *supra*, 307 U.S. at pp. 175, 178.) *Heller* "read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." (*Heller*, *supra*, 554 U.S. at p. 625.) *Heller* reasoned *Miller*'s common use limitation was "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" (*Heller*, at p. 627.)

Appellant has not shown short-barreled shotguns are in common use for lawful purposes. *Miller* and *Heller* establish that short-barreled shotguns are not entitled to Second Amendment protection. Although appellant attacks *Miller*'s soundness, *Heller*'s endorsement demonstrates the continuing validity of

3

*Miller*'s holding regarding short-barreled shotguns. (Cf. *People v. Brown* (2014) 227 Cal.App.4th 451, 468 [concluding former section 12020, the predecessor to section 33215, "on its face did not violate the Second Amendment"].)

Attempting to demonstrate common use today for lawful purposes, appellant cites a "press release" on a website associated with Senator Rick Scott for short-barreled shotgun registration data. But "[a]s an appellate court, absent exceptional circumstances, we consider only evidence in the record." (*People v. Crenshaw* (2025) 116 Cal.App.5th 1169, 1178-1179 (*Crenshaw*); *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 fn. 3 ["normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered'"], overruled on other grounds by *Bristol-Myers Squibb Co. v. Superior Court* (2017) 582 U.S. 255, 264 [198 L.Ed.2d 395].) We decline to rely on empirical claims in sources outside the record.

Regarding unlawful assault weapon activity, appellant confronts an even steeper task given the many California Court of Appeal cases rebuffing similar challenges. (See, e.g., *People v. James* (2009) 174 Cal.App.4th 662, 677 (*James*); *People v. Zondorak* (2013) 220 Cal.App.4th 829, 836 (*Zondorak*); *People v. Bocanegra* (2023) 90 Cal.App.5th 1236, 1257 (*Bocanegra*); *Crenshaw*, *supra*, 116 Cal.App.5th at p. 1179.)

As for the U.S. Supreme Court, *Heller* indicated bans on "M-16 rifles and the like" would not violate the Second Amendment. (*Heller*, *supra*, 554 U.S. at p. 627; see also *James*, *supra*, 174 Cal.App.4th at p. 676.) Assault weapons like the AR-15 "have a great deal in common with the military M-16 rifle."

(*Bocanegra*, *supra*, 90 Cal.App.5th at p. 1250; see also *Zondorak*, *supra*, 220 Cal.App.4th at p. 836 ["assault weapons are only slightly removed from M-16-type weapons . . ."].)  While *Heller*'s statement on M-16 rifles is dictum, it strongly attests to the constitutionality of section 30600's prohibition on assault weapon activity.  (Cf. *U.S. v. Serawop* (10th Cir. 2007) 505 F.3d 1112, 1122 ["[W]e are '"bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements."'"].)

Facing *Heller* and overwhelming California precedent, appellant relies heavily upon survey and statistical data.  Again, we decline to rely on these empirical sources, which are not included in the record.  (Cf. *Crenshaw*, *supra*, 116 Cal.App.5th at pp. 1178-1179; *People v. McCowan* (2026) 117 Cal.App.5th 1071, 1094-1095.)  Appellant has not shown assault weapons are commonly used for lawful purposes.

Appellant's invocation of *Caetano v. Massachusetts* (2016) 577 U.S. 411 [194 L.Ed.2d 99] is inapposite.  That brief per curiam opinion addressed a state court's reasons for holding the Second Amendment does not extend to stun guns.  (*Id*. at p. 411.)  Justice Alito's concurrence, joined only by Justice Thomas, is not binding authority.  (*Id*. at p. 412.)

Finally, appellant notes the Supreme Court recently stated "[t]he AR-15 is the most popular rifle in the country."  (*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos* (2025) 605 U.S. 280, 297 [221 L.Ed.2d 910].)  That case, however, concerned a lawsuit against firearms manufacturers and did not even reference the Second Amendment.  Especially given *Heller*'s more germane remarks, we will not extrapolate from the Court's parenthetical comment in a disparate context.

*Unlawful Large Capacity Magazine Activity*
*(§ 32310, subd. (a)) and Possession of a Silencer (§ 33410)*

Section 32310, subdivision (a) prohibits conduct (e.g., manufacture, import) regarding large-capacity magazines (LCMs), defined as any ammunition feeding device with the capacity to accept more than 10 rounds, with certain exclusions. (§§ 32310, subd. (a), 16740.) Section 33410 prohibits possession of a silencer, defined as "any device or attachment of any kind designed, used, or intended for use in silencing, diminishing, or muffling the report of a firearm," plus related parts. (§ 17210.)

These statutes withstand appellant's constitutional challenges because neither LCMs nor silencers qualify as arms.

"The 18th-century meaning [of arms] is no different from the meaning today." (*Heller*, *supra*, 554 U.S. at p. 581.) Dictionaries of that time defined "'arms'" as "'[w]eapons of offence, or armour of defence'" and as "'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'" (*Ibid.*)

In *Duncan v. Bonta* (9th Cir. 2025) 133 F.4th 852 (*Duncan*), the Ninth Circuit concluded LCMs did not constitute arms as so defined. (*Id.* at p. 867.) Without a firearm, an LCM "is benign, useless in combat for either offense or defense. [LCMs] thus fall clearly within the category of accessories, or accoutrements, rather than arms." (*Ibid.*) Nor is an LCM "necessary to operate any firearm." (*Id.* at p. 868.) As such, "the Second Amendment's plain text does not encompass a right to possess" LCMs. (*Ibid.*) We find *Duncan*'s reasoning persuasive and follow it.

Silencers likewise fail to meet the definition of arms. Silencers are not weapons of offense or armor of defense. Nor are they an object that a person "'takes into his hands, or useth in

wrath to cast at or strike another.'" (*Heller*, *supra*, 554 U.S. at p. 581.) Silencers are "optional accessories" unnecessary to operate a firearm. (*Duncan*, *supra*, 133 F.4th at p. 868; see also *United States v. Cox* (10th Cir. 2018) 906 F.3d 1170, 1186 ["A silencer is a firearm accessory; it's not a weapon in itself . . . ."].) Accordingly, silencers fall outside the Second Amendment's guarantee.[2]

### *Unlawful Transfer of a Handgun With No Licensed Firearms Dealer (§ 27545)*

Section 27545 provides that "[w]here neither party to the transaction holds a dealer's license issued pursuant to Sections 26700 to 26915, inclusive, the parties to the transaction shall complete the sale, loan, or transfer of that firearm through a licensed firearms dealer . . . ." (§ 27545.)

"The plain text of the Second Amendment directly protects one thing—the right to 'keep and bear'" arms. (*B & L Productions, Inc. v. Newsom* (9th Cir. 2024) 104 F.4th 108, 117.) The Second Amendment is silent as to the sale or purchase of arms. "Where the challenger is an individual whose direct possessory right to 'keep and bear Arms' is not implicated," the Ninth Circuit applies the ancillary-rights doctrine. (*United States v. Vlha* (9th Cir. 2025) 142 F.4th 1194, 1198.) "But the

---

[2] At the end of his opening brief, appellant includes a single paragraph arguing California's restrictions on silencers and short-barreled firearms are federally preempted. Especially given the complexity of federal preemption, we consider his cursory, conclusory argument to be undeveloped and treat it as forfeited. (See *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["We are not required to examine undeveloped claims or to supply arguments for the litigants."].)

Second Amendment is limited in this context: it protects ancillary activities only if the regulation of such activities 'meaningfully constrain[s]' the core individual possessory right." (*Ibid*.)

Applying the ancillary-rights doctrine here, section 27545 does not meaningfully constrain an individual's right to keep and bear arms. Section 27545 regulates the sale, loan, and transfer of a firearm between unlicensed parties. Appellant points to fees totaling less than $50, the necessity of travel in rural areas, and the existence of government records. Such inconveniences, however, do not rise to the level of a meaningful constraint on the right to keep and bear arms.

Much like the "'shall-issue'" licensing regimes discussed in *Bruen*, section 27545 helps ensure "that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" (*Bruen*, *supra*, 597 U.S. at p. 38, fn. 9.) Section 27545 "appear[s] to contain only 'narrow, objective, and definite standards' . . . ," and there is no indication the statute has been "put toward abusive ends . . . ." (*Ibid*.) Section 27545's modest regulation comports with the Second Amendment.

DISPOSITION

The judgment is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>

CODY, J.

We concur:

YEGAN, Acting P. J.          BALTODANO, J.

8

Matthew G. Guerrero, Judge
Barry T. LaBarbara, Judge
Superior Court County of San Luis Obispo

———————————————

Russell S. Babcock and Arpita Kundu for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kristen J. Inberg, and David Glassman, Deputy Attorneys General, for Plaintiff and Respondent.